JULIA RUSSELL, Proprietor of RELIABLE LAUNDRY, and Others, Plaintiffs, v. THE DEPARTMENT OF LABOR OF THE STATE OF NEW YORK and Others, Defendants.

Supreme Court, Onondaga County, November 19, 1929.

*George W. O'Brien,* for the plaintiff.

*Hamilton Ward, Attorney-General [P. J. Hughes, Deputy Assistant Attorney-General,* of counsel], for the defendants.

BROWN, J.   Pursuant to section 111 of the Labor Law of 1921, (as amd. by Laws of 1927, chap. 166), action has been brought by seventy-six laundry owners of the State of New York to determine the validity and reasonableness of rules and orders issued by the Industrial Board requiring the equipping with an interlocking device of washing machines, drying tumblers and shaker tumblers already installed on January 1, 1925.

On July 10, 1924, the Industrial Board, acting under authority of sections 28 and 29 of the Labor Law,* issued its Industrial Code Bulletin No. 27, containing the rules relating to the construction, equipment, maintenance and operation of laundries.   Rules 1714, 1718, 1720 and 1721, providing for the installation of interlocks on existing washing machines, drying tumblers and shaker tumblers, are the only rules involved in this action.

Rule 1714, applying to washing machines, reads as follows: " Each washing machine hereafter installed shall be equipped with an interlocking or other approved device that will prevent the inside cylinder from moving when the outer door on the case or shell is open and also prevent the door from being opened while inside cylinder is in motion.   On and after January 1, 1925, this rule shall also apply to existing installations, where practicable." Rules 1718, 1720 and 1721, applying to tumblers and shaker tumblers, are to the same effect.   Subsequent to the issuance of said rules, orders were issued by the Industrial Board directing compliance by the laundrymen with respect to said machines already installed January 1, 1925.   Acting pursuant to section 110 of the Labor Law,† the laundry owners petitioned the Industrial Board for a review of the validity and reasonableness of said rules and orders.   Hearings were held and testimony was taken.   On May 2, 1928, the Industrial Board refused to annul or modify said rules or orders, except that by resolution it was provided that the outer door on the washing machines could be kept open a distance of not more than six inches for the purpose of introducing supplies. Following the decision of the Industrial Board, this action was brought to seek a determination that the said rules and orders, so far as they required an interlocking device upon existing washing machines, tumblers and shakers as of January 1, 1925, are unreasonable and invalid.

---

* Later section 29 was amended by Laws of 1927, chap. 166.— [REP.
† Subds. 1 and 2 were amended by Laws of 1921, chap. 642.— [REP.

The authority for the issuance by the Industrial Board of said rules and orders is found in sections 27, 28 and 29 of the Labor Law of 1921.* The only question before this court is whether or not the rules and orders involved in this action are valid and reasonable, and the court is authorized to determine such issue. (Labor Law of 1921, § 111, as amd. by Laws of 1927, chap. 166; *Lown* v. *Department of Labor*, 216 App. Div. 474.)

The first question that naturally arises is, What is the danger to the employees or other persons from the washers, driers and tumblers, against which the orders and rules requiring an interlocking device sought to overcome? A great amount of testimony was taken before the Industrial Board and also upon the trial of this action. So far as the shakers and tumblers are concerned, the record is silent as to any injury whatever to employees or others due to a lack of interlocks. With respect to washing machines, there was received into evidence on the hearings before the Industrial Board, an exhibit prepared from information secured from a compensation folder covering an accident report for the fiscal years ending June, 1924, 1925 and 1926. According to the exhibit, there were in said three years 134 accidents on washing machines, and of these 41 were classified as " probably preventable by the interlock." At best, this is extremely unsatisfactory testimony. It involves mere speculation and guesswork. Even if true, there is not a record of a serious accident due to the absence of interlock. No proof was given on the trial of the action that there was any actual injury due to the absence of the interlock. On the contrary, twenty-three owners or managers of laundries coming from different parts of the State of New York, testified that they had never known of an accident where any one was injured by the inner cylinder of the washing machine. These witnesses have had many years experience in the practical operation of laundries, and their testimony carries conviction. Furthermore, both from an examination of the blueprints and pictures and listening to the explanation of the operation of the washing machines, I am not at all impressed with the fact that there is any danger to employees working upon said washing machines. The only movable part is an inner cylinder entirely inclosed in an outside shell. The inner cylinder is not exposed except to admit supplies and to permit the operator to observe how the washing is working. I am moreover convinced by the testimony that an attempt to install an interlock upon these old machines increases rather than diminishes the hazard. The engineer sworn by the plaintiff testified that such an installation was wrong

* Sections 27 and 29 were amended by Laws of 1927, chap. 166.— [REP.

mechanically, and several laundrymen testified as to the dangerous result of the attempt to apply the interlock upon the old washers, as required by the Industrial Board. The application of the interlock does not, in my opinion, promote the health and safety of the employees or any other persons.

Not only does the application of the interlock increase rather than reduce any hazard, but there are other and further objections. In the first place, no satisfactory interlock has been marketed to fit the old-type washing machine. Satisfactory interlocks are not for sale commercially. Many of the laundrymen have endeavored to work out a scheme of their own to satisfy the rules and orders, but without very much success. In the ordering of these interlocks on the old washing machines, there seems to have been completely lost sight of the necessity of the laundrymen to observe the suds while actually washing. Testimony was offered by the plaintiffs and not denied by the defendant, that in order to properly wash clothes, observation must be made from time to time as to the condition of the suds, etc. The allowance of the six-inch opening of door to admit supplies does not in any way take care of this requirement as to observation. I appreciate that the expense of applying interlocks should not have consideration in this case, provided there was a real evil to be cured and the interlocks actually worked. But when we have a situation where the danger is enhanced instead of diminished; where the use of the interlock renders satisfactory washing impossible, we should also consider the tremendous expense involved if these rules and orders are held valid and reasonable. The laundrymen own eight hundred and thirty-one washing machines, forty-two drying tumblers, and seven shaker tumblers. To comply with the orders and rules of the Industrial Board, an expense of over $750,000 would be involved.

In summary, it may be stated that the enforcement of the rules and orders under consideration means the expenditure of large sums of money, with benefit to no one and with positive disadvantage to both employees and the plaintiffs.

The learned Deputy Attorney-General in his brief cites many cases holding valid certain statutes under the police power. With these decisions, this court is, of course, in accord, but believes that they have no application to the present action. By statute, the validity and reasonableness of the orders and rules adopted by the Industrial Board are subject to a review by the Supreme Court. For the reasons hereinbefore given, I am of the opinion that the orders and rules involved in this action are invalid and unreasonable, and I so hold.

Findings to be prepared accordingly.